**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ireno Lalangan,<br><br>           Plaintiff,<br><br>v.<br><br>Greg Pennington, et al.,<br><br>           Defendants. | No. CV-20-00292-TUC-JCH<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Default Judgment ("Motion"). (Doc. 39.) For the following reasons, the Court denies the Motion.

**I.      BACKGROUND**

On July 7, 2020, Plaintiff filed a complaint against Greg Pennington and Jane Doe Pennington, dba Penn-Tek alleging, *inter alia*, breach of contract. (Doc. 1.) On July 31, 2020, Defendant Greg Pennington, *pro se*, filed an answer and counterclaim alleging that all acts and omissions were done "solely on behalf of PEN-TEK, LLC." (Doc. 5 at p. 1.) Defendant Greg Pennington initially participated in the litigation by way of assisting in preparing the Rule 26(f) Joint Report, appearing at the Case Management Conference and giving his deposition. *See* Docs. 9, 12, 18-1. Greg Pennington's participation eventually ceased, and Plaintiff filed a proposed final pretrial order, settlement status report and a motion in limine. (Docs. 18-20.)

On August 10, 2021, the Court held a Status Conference at which Defendants failed to appear. (Doc. 23.) At the Status Conference, the Court granted Plaintiff leave to file an

amended complaint. *Id*. On August 12, 2021, Plaintiff filed an Amended Complaint adding Pen-Tek, LLC as a Defendant and adding an "Alter Ego Liability" claim against "Pennington." (Doc. 22.) All Defendants were served with the Amended Complaint. (Docs. 26, 35.) No Defendant timely answered or otherwise responded to the Amended Complaint and default was subsequently entered against all Defendants. (Docs. 29, 36.)

On December 19, 2021, Plaintiff filed the instant Motion. (Doc. 39.) On December 21, 2021, Plaintiff filed a supporting Sum Certain Affidavit. (Doc. 41.)

## II. LEGAL STANDARD

District courts have discretion to enter a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "If default judgment is sought against a party that failed to plead or otherwise defend, courts must determine they have subject matter jurisdiction over the matter and personal jurisdiction over the party." *Verduzco v. Value Dental Centers Mesa W. AZ LLC*, No. CV-20-02380-PHX-DJH, 2021 WL 4222005, at *1 (D. Ariz. Sept. 16, 2021) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

After finding that it has jurisdiction, the district court "is not required to make detailed findings of fact," but should consider and weigh relevant factors. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Relevant factors that may be considered are: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In considering the merits and sufficiency of the complaint, the court accepts as true the complaint's well-pled factual allegations, but the plaintiff must establish all damages sought. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). *See also Gemmel v. Systemhouse, Inc.*, No. CV-04-187-TUC-CKJ, 2008 WL 65604, at *3 (D. Ariz. Jan. 3, 2008) (once default has been entered the district court takes as true all well-pled factual allegations in the complaint except for those related to the amount of damages).

### III. ANALYSIS

#### a. Jurisdiction

Plaintiff is a resident of Washington state. (Doc. 22 at ¶ 1.) Defendants Greg and Jane Doe Pennington are alleged to be married individuals living in Arizona and Defendant Penn-Tek, LLC is an alleged Arizona limited liability company with its principal place of business in Sierra Vista, Arizona. *Id.* at ¶¶ 2-3. The amount in controversy is alleged to exceed $75,000. *Id.* at ¶ 5. The Court is satisfied that is has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

The record establishes that all Defendants were served with the Amended Complaint. (Docs. 26, 35.) The Court is satisfied that it has personal jurisdiction over Defendants.

#### b. The *Eitel* Factors

The Court applies Arizona law in deciding Plaintiff's Motion. *See Williams v. Bankers Life & Cas. Co.*, No. CV-09-1078-PHX-ROS, 2009 WL 10673085, at *1 (D. Ariz. Nov. 24, 2009) ("[J]urisdiction exists pursuant to 28 U.S.C. § 1332 and the [c]ourt must apply Arizona substantive law."). *See also Salve Regina College v. Russell*, 499 U.S. 225, 226, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991) ("*Erie* mandates that a federal court sitting in diversity apply the substantive law of the forum State....")). As mentioned above, in determining whether to enter a default judgment the district court considers the factors enumerated by the United States Court of Appeals for the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The Court considers the *Eitel* factors below *in seriatim*.

##### i. Possible Prejudice to Plaintiff

The first *Eitel* factor considers whether Plaintiff will suffer prejudice if a default judgment is not entered. *Id.* at 1471. Defendants have not answered the Amended Complaint, nor have they otherwise appeared in this action. Thus, Plaintiff has no alternative means by which to resolve his claims against Defendants. Without a default judgment, Plaintiff's damages would remain unrelieved.

The Court finds that the first *Eitel* factor weighs in favor of entering a default judgment.

### ii. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Amended Complaint

The second *Eitel* factor considers the merits of the plaintiff's substantive claim. *Id.* at 782 F.2d at 1471. The third *Eitel* factor considers the sufficiency of the complaint. *Id.* The second and third *Eitel* factors "are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). These two factors require that the plaintiff's allegations "state a claim on which [he] may recover." *Id.* (quoting *Danning v. Lavine*, 52 F.2d 1386, 1388 (9th Cir. 1978)).

The Amended Complaint alleges claims of breach of contract, common law fraud, negligent misrepresentation and alter ego liability. (Doc. 22 at 4-8.)

#### 1. Breach of Contract

"To state a cause of action for breach of contract, the [p]laintiff must plead facts alleging '(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff.'" *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093–94 (D. Ariz. 2021) (quoting *Dylan Consulting Servs. LLC v. SingleCare Servs. LLC*, No. 16-CV-02984-PHX-GMS, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018)). "A plaintiff need not plead the terms of the alleged contract with precision, but 'the [c]ourt must be able generally to discern at least what material obligation of the contract defendant allegedly breached.'" *Hannibal-Fisher*, 523 F. Supp. 3d at 1093–94 (quoting *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2016 WL 6524396, at *3 (N.D. Cal. Nov. 3, 2016)) (additional citations omitted). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached[.]" *Hannibal-Fisher*, 523 F. Supp. 3d at 1094 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

Plaintiff alleges that he and "Defendant"[1] entered into a binding contract for the replacement of 75 HVAC units. (Doc. 22 at ¶ 29.) Attached to the Amended Complaint is the alleged contract. *Id*. at 12. The contract identifies as Pen-Tek LLC as the entity responsible for, *inter alia*, furnishing all materials, equipment and labor necessary to install "75, R-410A, roof mounted condensers." *Id*. Plaintiff alleges that "Defendant" materially breached of the contract "by failing to purchase and install the requested HVAC R-401A units within five (5) (*sic*) of his request to do so" and that he suffered damages as a result of Defendant's breach. *Id*. at ¶¶ 30-31.

The Court finds that Plaintiff has plausibly alleged a breach of contract claim.

### 2. *Common Law Fraud*

The elements of common law fraud under Arizona law are: "(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." *Strategic Diversity, Inc. v. Alchemix Corp.,* 666 F.3d 1197, 1210 n.3 (9th Cir. 2012) (quoting *Staheli v. Kauffman,* 122 Ariz. 380, 383, 595 P.2d 172 (1979) (internal quotations omitted)). Rule 9 of the Federal Rules of Civil Procedure "requires allegations of fraud be pled with particularity…[.]" *Silving v. Wells Fargo Bank*, *NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action. While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." (internal quotation marks and citation omitted; alterations removed)). "While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."

---

[1] Plaintiff collectively refers to all Defendants as "Defendant" in his Amended Complaint. See Doc. 22 at ¶ 4.

*Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1151 (D. Ariz. 2012) (quoting *Dumesnil v. Bank of America, N.A.*, No. CV 10-0243-PHX-NVW, 2010 WL 1408889, at *2 (D. Ariz. April 7, 2010)).

Plaintiff alleges that, "[i]n an effort to solicit Plaintiff's business, Defendant made specific representations to him that were false when they were made, that Defendant knew they were false when they were made, that Defendant intended to cause Plaintiff to rely thereon, that in fact caused Plaintiff's reliance thereon, and the reliance was reasonable under the circumstances all of which directly and proximately cause[d] Plaintiff's damages." (Doc. 22 at ¶ 35.)

The Court finds that Plaintiff's allegations of fraud are mere conclusory allegations and fail to state a plausible claim for relief.

### 3. Negligent Misrepresentation

"In Arizona, negligent misrepresentation 'is committed by the giving of false information intended for the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise reasonable care or competence in obtaining or communicating the information.'" *Casey v. Wright Med. Tech., Inc.*, No. CV-19-05360-PHX-NVW, 2020 WL 736306, at *6 (D. Ariz. Feb. 13, 2020) (quoting *St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312, 742 P.2d 808, 813 (1987) (en banc)). In order to state a claim for negligent misrepresentation a plaintiff is required to allege that (1) the defendant supplied the plaintiff with false information; (2) the defendant intended that the information would "guide" the plaintiff in his decision making; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff relied upon the information; (5) the plaintiff's reliance was justified; and (6) the plaintiff suffered damage; (7) caused by his reliance. *Id*.

Here, Plaintiff fails to allege with any factual specificity which Defendant made a representation to him concerning the replacement of the HVAC units. Plaintiff's negligent misrepresentation claim is also otherwise devoid of any factual enhancement. *See* Doc. 22

at ¶ 41. The Court finds that Plaintiff fails to state a plausible claim for negligent misrepresentation.

*4. Conversion*

Under Arizona law, conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Benson v. Energy Sols., Inc.*, No. CV-13-2201-PHX-LOA, 2014 WL 4311755, at *11 (D. Ariz. Sept. 2, 2014), *aff'd in part, vacated in part, remanded*, 669 F. App'x 905 (9th Cir. 2016) (quoting *Case Corp. v. Gehrke,* 208 Ariz. 140, 91 P.3d 362, 365 (Az. Ct. App. 2004) (citation omitted). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Benson*, 2014 WL 4311755, at *11 (quoting *Case Corp.,* 91 P.3d at 365).

Plaintiff alleges that, "[b]ased upon Defendant's false representations, Plaintiff placed over One Hundred and Sixty-Thousand Dollars (*sic*) worth of air conditioning equipment in the care and custody of the Defendant." (Doc. 22 at ¶ 47.) He also alleges that, "Defendant has exerted custody and control over the [e]quipment and refuses to surrender the same to Plaintiff." *Id*. at ¶ 48. Absent from the Amended Complaint is an allegation that Plaintiff was entitled to possession of the air conditioning equipment at the time of the alleged conversion. *See Id*.

Additionally, "[a] conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if the money can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Little v. Grand Canyon Univ*., 516 F. Supp. 3d 958, 966 (D. Ariz. 2021) (quoting *Chase Corp*., 208 Ariz. at 143) (internal quotations omitted). Here, Plaintiff is seeking to recover a debt owed to him by Defendants that can be satisfied by money. As such, Plaintiff must show that the money he paid Defendants pursuant to the contract can be described, identified or segregated and he must also establish that Defendants had an obligation to treat the funds that Plaintiff paid in a specific manner. The Amended Complaint is devoid of any such allegations. *See, e.g*., Doc. 22 at ¶¶ 46-52.

The Court finds that the Amended Complaint fails to state a claim for conversion.

### 5. Alter Ego Liability

"In general, a corporation is treated as a separate entity, and the personal assets of a corporate officer may not be reached to satisfy corporate liabilities." *Five Points Hotel Partnership v. Pinsonneault*, 835 F. Supp. 2d 753, 759 (D. Ariz. 2011) (citing *Loiselle v. Cosas Mgmt. Group, LLC*, 224 Ariz. 207, 228 P.3d 943, 950 (Ariz. Ct. App. 2010)). "But courts will disregard the corporate entity and pierce the corporate veil if there is sufficient evidence that: 1) the corporation is actually the alter ego of one or a few individuals and 2) observance of the corporate's separate legal status would sanction a fraud or promote injustice." *Five Points Hotel Partnership*, 835 F. Supp. 2d at 759 (citing *Employer's Liab. Assurance Corp. v. Lunt*, 82 Ariz. 320, 313 P.2d 393, 395 (1957)).

Plaintiff alleges that "[a]t all relevant times hereto including the times that Pennington negotiated the [c]ontract with the Plaintiff, Pennington was the alter ego of Penn-Tek LLC." (Doc. 22 at ¶ 54.) Plaintiff alleges that "Penn-Tek was not a fully capitalized company[;]" that "Penn-Tek did not observe the formalities that are incidental to Arizona limited liability companies[;]" that "Pennington used the Penn-Tek Chase checking account as his personal account and he paid personal debts therefrom at all relevant times[;]" that "Pennington co-mingled the Penn-Tek cash with Pennington's own personal funds at all relevant times[;]" that "Pennington acted as the principal of Penn-Tek at all relevant time[;]" that "Pennington used Pen-Tek in order to avoid his malfeasance that includes the taking of the Plaintiff's cash and not rendering service pursuant to the parties' [c]ontract[;]" and that "there is such a unity of interest between Pennington and Penn-Tek so much so that separate personalities of the company and Pennington ceased to exist." *Id*. at ¶¶ 55-61. The Court finds that the Amended Complaint plausibly alleges alter ego liability.

In sum, the Court finds that the Amended Complaint states a plausible claim of breach of contract and plausibly alleges alter ego liability but fails to state plausible claims of common law fraud, negligent misrepresentation and conversion. On balance, the Court

finds that the second and third *Eitel* factors weigh in favor of entry of default judgment.

### iii. The Sum of Money at Stake

Under the fourth *Eitel* factor the district court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *Eitel*, 782 F.2d at 1471. "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Gemmel*, 2008 WL 65604, at *4.

Plaintiff's Sum Certain Affidavit seeks an award of $1,055,000.[2] (Doc. 41.) The contract obligated Pen-Tek LLC to, *inter alia*, install 75 R-410A roof mounted condensers for Plaintiff's payment of $168,000. (Doc. 22 at 12.) The contract obligated Plaintiff to pay an initial down payment of $142,500 "via credit card over the next 14 days." *Id*. The contract provides that the final $25,500 "shall be paid at a rate of three hundred and forty dollars ($340.00) per unit as each unit is completed." *Id*.

In his Amended Complaint, Plaintiff alleges that "[o]n or about March 12, 2020, Defendant refused to disclosed (*sic*) how many HVAC R-410A units he replaced at the [p]roperty as well as how many remaining HVAC R-410A units and the associated fan coil units were stored at his facility." *Id*. at ¶ 27. In his Sum Certain Affidavit, Plaintiff alleges that, "[a]fter two years, however, on March 18, 2020, Pen-Tek had only installed thirty (30) of the HVAC units." (Doc. 41 at ¶ 2.) Plaintiff seeks $89,600 as "reimbursement for the units that were never installed." *Id*. at ¶ 3.

Plaintiff also seeks $966,000 representing lost rental income for his claimed inability to rent 40 apartment units over a 46-month time period less the amount saved in overhead expenses over the same time period. *Id*. at ¶¶ 4-11. As mentioned, in his Sum Certain Affidavit, Plaintiff alleges that Pen-Tek LLC only installed 30 HVAC units. (Doc. 41 at ¶ 2.) Plaintiff also claims an inability to rent 40 apartment units due to the units not having an HVAC until installed. *Id*. at ¶ 5. The contract obligates Pen-Tek LLC to replace 75 HVAC units and the Court finds that there is discrepancy of 5 HVAC units between the contract and Plaintiff's Sum Certain Affidavit.

---

[2] The Sum Certain Affidavit contains a mathematical error and the award sought should read $1,055,600 (the sum of $89,600 and $966,000). *See* Doc. 41 at ¶ 12.

In sum, the Court finds that the sum of money sought is substantial and sufficiently disproportionate to the seriousness of Defendants' conduct that this factor weighs against entry of default judgment.

### iv. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. *Eitel*, 782 F.2d at 1471-72. Defendants have failed to answer the Amended Complaint and the time has passed for Defendants to dispute the well-pleaded allegations in the Amended Complaint. As such, the well-pleaded allegations are treated as true. *Verduzco*, 2021 WL 4222005, at *2. The Court finds that the possibility of a dispute concerning any materials facts is low. *See STORE Master Funding II LLC*, 2021 WL 3290531, at *4 ("Here, there is very little possibility of dispute concerning the material facts. Defendant has not made any effort to challenge Plaintiff's Complaint or otherwise appear in this case, despite being served with process in this action.").

The Court finds that the fifth *Eitel* factor weighs in favor of entering default judgment.

### v. Whether the Default was Due to Excusable Neglect

The sixth *Eitel* factor considers whether the default is due to excusable neglect. *Eitel*, 782 F.2d at 1472. The Court finds that there is no evidence that Defendants failed to appear because of excusable neglect. Defendant Greg Pennington participated early on in the litigation. Despite being served with the Amended Complaint, all Defendants have failed to appear and defend themselves against Plaintiff's allegations.

The Court finds that this factor weighs in favor of entering default judgment.

### vi. The Policy Favoring Decisions on the Merits

The seventh *Eitel* factor requires the district court to consider the policy that cases should be decided on the merits when possible. *Id*. This factor necessarily weighs against entering a default judgment in every case in which a default judgment is sought. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference, standing alone, is not dispositive.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. 1996)).

Here, the Court finds that deciding this case on the merits is impossible due to Defendants' failure to defend. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("Moreover, [d]efendant's failure to answer [p]laintiffs' [c]omplaint makes a decision on the merits impractical, if not impossible."). The policy of favoring a decision on the merits cannot be met in this case, and Rule 55(a) permits termination for a case before the merits are reached when a defendant fails to defend. *See* Fed. R. Civ. P. 55(a). Accordingly, the Court finds that while the seventh *Eitel* factor weighs against the entry of default judgment, this factor does not preclude the entry of default judgment.

In sum, the Court finds that the first, second, third, fifth, and sixth *Eitel* factors favor entry of default judgment. The fourth and seventh *Eitel* factors weigh against entry of default judgment. On balance, the Court finds that entry of default judgment is appropriate in this case.

### c. Damages

"In contrast to the other allegations in the [c]omplaint, allegations pertaining to damages are not taken as true." *STORE Master Funding II LLC,* 2021 WL 3290531, at *3 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). "As a result, 'Plaintiff is required to prove all damages sought in the complaint.'" *STORE Master Funding II LLC*, 2021 WL 3290531, at *3 (quoting *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). "Damages may be proven through either an evidentiary hearing, or through affidavits and other documents as exhibits that provide a factual basis for determining the amount of a default judgment award." *Vaile v. Nat'l Credit Works, Inc.*, No. CV-11-674-PHX-LOA, 2012 WL 176314, at *2 (D. Ariz. Jan. 23, 2012). "A conclusory affidavit fails to establish a basis for the damages a plaintiff seeks." *Stockart.com, LLC v. Engle*, No. 10-CV-00588-MSK-MEH, 2011 WL 10894610, at *12 (D. Colo. Feb. 18, 2011) (citing *Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc.*, 655 F.Supp.2d 177, 189–190 (E.D. N.Y. 2009)).

"The damages sought must not be different in kind or amount from those set forth in the complaint." *STORE Master Funding II LLC*, 2021 WL 3290531, at *3 (quoting

*Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (citing Fed. R. Civ. P. 54(c)). Rule 54(c) of the Federal Rules of Civil Procedure precludes the Court from entering a default judgment that exceeds in amount "what is demanded in the pleadings." *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

In his Amended Complaint, Plaintiff sought compensatory damages in the amount of at least $300,000.00 and punitive damages in the amount of at least $300,000. *See* Doc. 22 at 5, 7. As set forth above, the Court has determined that Plaintiff has only plausibly alleged a breach of contract claim and an alter ego theory of recovery. Punitive damages are generally not available for breach of contract. *See Barnes v. Forman*, 536 U.S. 181, 187-88, 122 S. Ct. 2097, 2102, 153 L. Ed. 2d 230 (2022) ("But punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract.") (citations omitted). Additionally, "[a]s a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable." *Vaile*, 2012 WL 176314, at *2 (quoting *Comdyne I Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990)). Plaintiff has not requested an evidentiary hearing on his Motion. The Court finds that Plaintiff is not entitled to an award of punitive damages.

In his Sum Certain Affidavit, Plaintiff seeks a total damage award of $1,055,600.[3] (Doc. 41.) As mentioned above, according to Plaintiff, this sum is comprised of the sum of $89,600 representing an amount for the 40 HVAC units that were not installed and $966,000 representing the lost rental income for the 40 apartment units that were vacated and uninhabitable because as a result of not receiving an HVAC unit, less saved overhead expenses, over a 46-month time period. *Id.* at ¶ 3-11. The Court addresses each item of damage sought below.

---

[3] The Court uses the amount that should be set forth considering the mathematical error contained in Plaintiff's Sum Certain Affidavit identified in footnote 2, *supra*. *See* n.2, *supra*.

i. Damages Relating to the Uninstalled 40 HVAC Units

Based on the contract price of $168,000 for the purchase and installation of 75 units, Plaintiff asserts that the contract price for each unit is $2,240. ($168,000/75 = $2,240). (Doc. 39 at 2 n.1.) Plaintiff claims that he is entitled to the amount of $2,240 per unit for Pen-Tek LLC's failure to install 40 HVAC units ($2,240 x 40 = $89,600). *Id*.

Significantly, however, Plaintiff fails to allege either in the Amended Complaint or his Sum Certain Affidavit that he paid the full contract price of $168,000. At most, Plaintiff alleges in the Amended Complaint that "[i]n consideration for Plaintiff's payment of $168,000 to the Pennington (*sic*), the later agreed to perform the following tasks: […]" (Doc. 22 at ¶ 19.) Indeed, the contract did not call for Plaintiff to pay the full contract price at once. As mentioned above, the contract obligated Plaintiff to pay an initial down payment of $142,500 "via credit card over the next 14 days." *Id*. at 12. The contract further provided that "[t]he final Twenty[-]Five thousand, five hundred dollars ($25,500) shall be paid at a rate of three hundred and forty dollars ($340.00) per unit as each unit is completed. *Id*.[4] Plaintiff does not allege that he paid the $142,500 initial down payment nor does he allege that he paid "the final" $25,500 payment.

In light of Plaintiff's failure to allege he has paid the full contract price the Court finds that Plaintiff has failed to establish that he is entitled to an award of $89,600 as a result of Defendants' failure to install 40 HVAC units.

ii. Lost Rental Income Damages

Plaintiff also alleges that "when the remaining HVAC units were not installed, tenants in all units canceled their leases and the units could not be rented against (*sic*) as they were uninhabitable." (Doc. 41 at ¶ 4.) He avers that "[f]rom March 18, 2020, forward forty-six months, [he] had forty (40) rental units that had been vacated and not available to rent." *Id*. at ¶ 5.[5] He explains that he rents "studios, one[-]bedroom units and two[-

---

[4] The Court acknowledges that in Plaintiff's Motion "Lalangan alleges that he paid Pennington the full contract price of $168,000 at the beginning of the contract period[.]" (Doc. 39 at 2.) However, there is no citation to the Amended Complaint or the Sum Certain Affidavit in support of this allegation. *Id*.

[5] Significantly, 46-months from March 18, 2020 is January 18, **2024**.

- 13 -

]bedroom units for $650, $750 and 850, respectively, with $750 being the average rental rate." (Doc. 41 at ¶ 6.) He states that his "operating costs equal 30% of the rental rate." *Id*. at ¶ 7. From these figures Plaintiff claims that the gross rental income he would have received from the rental of the 40 vacant units over the 46-month period would have been $1,380,000. *Id*. at ¶ 9. He claims that the operating costs saved as a result of the vacancy of 40 apartment units for 46 months is $414,000. *Id*. at ¶ 10. Based the foregoing Plaintiff claims lost profit damages in the amount of $966,000. *Id*. at ¶ 11.

The Court finds Plaintiff's Sum Certain Affidavit insufficiently detailed to support the almost $1 million dollar sum requested for lost profits. For example, Plaintiff's allegation of his average monthly rental rate does not appear to be tied to any of the 40 specifically identifiable apartment units that have allegedly been vacant for almost 4 years. Plaintiff's operating costs of "30% of the rental rate" is similarly lacking in detail.

In light of the foregoing, the Court finds that Plaintiff has failed to sufficiently establish that he is entitled to an award of $1,055,600. Because the Court finds that Plaintiff is entitled to entry of default judgment Plaintiff will be granted leave to file supplemental evidence in support of his claimed damages.

### IV.   CONCLUSION

The Court finds that Plaintiff is entitled to entry of default judgment, but that he has failed to establish that he is entitled to judgment in the amount claimed in his Sum Certain Affidavit. Accordingly,

**IT IS HEREBY ORDERED DENYING** Plaintiff's Motion for Default Judgment (Doc. 39). Plaintiff may submit supplemental evidence in support of his claimed damages by way of a second motion for entry of default judgment within 14 days of the date of this Order. If Plaintiff fails to submit supplemental evidence in support of his claimed damages within the time period set forth in this Order, this case will be dismissed without further notice for failure to prosecute.

Dated this 17th day of February, 2022.

Honorable John C. Hinderaker
United States District Judge

- 14 -