WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ireno Lalangan, | No. CV-20-00292-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Greg Pennington, et al., | |
| Defendants. | |

This case concerns a contract for the sale and installation of 75 HVAC units at two apartment complexes in Sierra Vista, Arizona. (Doc. 22.) On April 13, 2022, the Court entered an Order determining that Plaintiff was entitled to an award of $85,500.00 in contract damages. (Doc. 44.) On June 28, 2022, the Court held an evidentiary hearing on Plaintiff's claim for an award of lost profit damages and took the matter under advisement. (Doc. 45.) On July 7, 2022, Plaintiff moved for an award of attorney's fees and costs. (Doc. 48.) The Court now rules.

**I.      EVIDENCE ON LOST PROFIT DAMAGES**

On March 9, 2018, Plaintiff and Defendant Pen-Tek LLC entered into a contract for the purchase and installation of 75 HVAC units that were to be installed at Plaintiff's two apartment complexes in Sierra Vista, Arizona. At the evidentiary hearing, Plaintiff testified that he purchased the two apartment complexes in 2018. The two apartment complexes have a combined occupancy of 440 units. The apartment complexes had a 70% occupancy rate at the time Plaintiff purchased them.

The contract provides, *inter alia*, that "Pen-Tek LLC will install [the 75 HVAC] units over the next 24 months when [it is] notified of which units need to be replaced." (Doc. 22 at 12.) Plaintiff testified that at the end of the two year period only 30 HVAC units had been replaced. Plaintiff initially testified that when he entered into the contract, none of the 75 HVAC units that were to be replaced were working. On further questioning, Plaintiff testified that when he entered into the contract some of the 75 HVAC units that were to be replaced under the contract were functioning. However, on additional questioning, Plaintiff changed his testimony again and claimed that when he entered into the contract all of the 75 HVAC units that were contemplated to be replaced under the contract were not working.

In his Amended Sum Certain Affidavit Pursuant to Rule 55(b)(1), Plaintiff avowed that "[w]hen the remaining HVAC units were not installed, tenants canceled leases and the rental units could not be leased again without operating HVAC units." (Doc. 43 at 3, ¶ 8.) Consistent with his affidavit, Plaintiff testified that he has been unable to rent 45 apartment units because they do not have air conditioning as a result of Defendants' failure to replace the HVAC units in the 45 apartment units. However, Plaintiff offered no explanation for the claimed simultaneous termination of 45 leases.

Plaintiff testified that he spoke with Defendant Greg Pennington about the replacement of the HVAC units during the course of performance of the contract. Plaintiff testified that he told Greg Pennington that he was losing $750.00 per month for two-bedroom apartment units and $650.00 per month for one-bedroom units as a result of Pen-Tek LLC's failure to replace the HVAC units.

Relying upon information contained in exhibit 8,[1] Plaintiff testified that his gross receipts for the rental of 30 two-bedroom apartment units for 26 months would have been $585,000.00 and that his gross receipts for the rental of 15 one-bedroom apartment units for 26 months would have been $253,000.00. Paul Lalangan, Plaintiff's son, also testified.

---

[1] Although Plaintiff did not move for the admission of any exhibit that he offered at the evidentiary hearing, the Court will refer to an exhibit that was discussed at the hearing when relevant to this Order.

Mr. Paul Lalangan testified that he is familiar with the books and records of the two apartment complexes in issue. He testified that the two apartment complexes have a higher than normal vacancy rate as a result of many apartment units needing work, including needing HVAC units. Mr. Paul Lalangan testified that after his review of the books and records of the company for the year 2021, the operating expenses for the two apartment units were 46% of gross income.

## II.     LEGAL STANDARD

"The well-established rule in Arizona is that the damages for breach of contract are those which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered into the contract." *S. Ariz. School for Boys, Inc. v. Chery*, 580 P.2d 738, 741 (Ariz. App. Div. 2 1978). "Referred to as 'expectation damages,' contract damages are most often based on the party's expected value of the contract that was unfulfilled due to the other party's nonperformance." *Moore v. First Transit Bus Co.*, No. CV-20-00790-PHX-JJT, 2020 WL 9347648, at *2 (D. Ariz. Sept. 23, 2020). Lost profit damages are available for breach of contract if they are within the contemplation of the parties. *See Short v. Riley*, 724 P.2d 1252, 1254-55 (Ariz. App. Div. 2 1986) (lost profits sustained as damages naturally flowing from breach of contract and within contemplation of parties).

## III.    ANALYSIS

Plaintiff hass not established that he is entitled to an award of lost profits for two reasons. First, there is insufficient evidence that lost profit damages were contemplated by the parties at the time of contracting. Second, the fact and amount of lost profits have not been sufficiently established.

### a. There is Insufficient Evidence that at the Time of Contracting the Parties Contemplated an Award of Lost Profit Damages

"Arizona law comports with general principles of contract which dictate that '[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result when the contract was made.'" *Arizona Precious Metals, Inc.*

*v. Accept Erste Rohstoff Beteiligungs KG*, 407 Fed. Appx. 216, 217 (D. Ariz. Jan. 3, 2011) (quoting RESTATEMENT (Second) of Contracts § 351 (1981)). No evidence was presented on the parties' negotiations prior to entering into the contract. Plaintiff testified that he called Greg Pennington during the course of the performance of the contract and told him that he was losing $750.00 per month for two-bedroom units and $650.00 per month for one-bedroom units as a result of Pen-Tek's failure to perform.

Because no evidence was presented on the parties' negotiations prior to entering into the contract and the contract is silent on either parties' remedies in the event of a breach, the Court finds Plaintiff is not entitled to an award of lost profit damages under Arizona law.

### b. The Fact and Amount of Lost Profit Damages are not Sufficiently Established

Arizona law does not provide for the recovery of damages unless they are reasonably certain. *Hubbard v. Shelton*, No. CV-08-623-TUC-DCB, 2011 WL 13183092, at *7 (D. Ariz. Nov. 23, 2011) (citing *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 680 P.2d 1235, 1244 (Ariz. App. Div. 1 1984)). "Courts will award damages for loss of profits in an established business ... if they are proved with certainty. Such certainty is provided where the plaintiff devises some reasonable method of computing his net loss." *Hubbard*, 2011 WL 13183092, at *7 (quoting *Liniger v. Dine Out Corp.*, 639 P.2d 350, 352-53 (Ariz. Capp. Div. 2 1981)). "The requirement of 'reasonable certainty' in establishing the amount of damages applies with added force where a loss of future profits is alleged." *Hubbard*, 2011 WL 13183092, at *7 (quoting *Gilmore v. Cohen*, 386 P.2d 81, 83 (Ariz. 1963)).  It is "well settled that conjecture or speculation cannot provide the basis for an award of damages. The evidence must make an approximately accurate estimate possible." *Hubbard*, 2011 WL 13183092, at *7 (quoting *Rancho Pescado*, 680 P.2d at 1247).

Plaintiff testified that at the time he purchased the two apartment complexes in 2018, the complexes had a combined total of 440 apartment units and a combined occupancy rate

of 70%. In other words, the two complexes had a total of 308 units occupied and a total of 132 units vacant at the time they were purchased. While the date that Plaintiff closed on the purchase of the two apartment complexes was not offered into evidence, it seems likely that about 132 units were also vacant on March 9, 2018 when the parties entered into the contract.

Plaintiff testified that all of the 75 apartment units that were to have an HVAC unit replaced (due to the HVAC units not functioning) were occupied. However, Plaintiff's testimony on the functionality of the 75 HVAC units shifted during the hearing. Plaintiff also could not offer any explanation for the claimed simultaneous termination of 45 leases at the end of the contract term. Furthermore, according to Mr. Paul Lalangan, as of 2021, three years after the parties entered into the contract, the two apartment complexes continue to suffer from a high vacancy rate as a result of numerous apartment units needing repair work including needing HVAC replacement.

Evidence on the amount of Plaintiff's lost profits was provided solely through testimony from Plaintiff and his son. Both Plaintiff and his son testified as to figures provided on a chart contained in exhibit 8. No documents supporting the figures on exhibit 8 were offered into evidence. Based on exhibit 8, Plaintiff testified that he would have received $585,000 in gross receipts for the rental of 30 two-bedroom units and $253,000 in gross receipts for the rental of 15 one-bedroom units for 26 months.

The Court finds that Plaintiff has failed to establish his lost profits with reasonable certainty. For example, in *Gilmore*, the Arizona Court of Appeals upheld the trial court's ruling that lost profit damages were not established with reasonable certainty where the evidence on lost profit damages was all in the form of testimony. 386 P.2d at 83. Similarly, in this case, all of the evidence offered on lost profits was in the form of testimony from Plaintiff and his son. While Plaintiff's exhibit 8 is a document containing a "LOST PROFIT CHART," [2] no documents supporting the figures contained in the chart on exhibit 8 were offered into evidence. The lost profit chart is not a record establishing lost profit damages.

---

[2] Exhibit 8 also contains a "BREACH OF CONTRACT DAMAGE CHART" immediately below the "LOST PROFIT CHART."

Also in *Gilmore*, the state court of appeals found that the testimony offered by the plaintiffs was contradictory, ambiguous and confusing. 386 P.2d at 83. Here, as explained above, Plaintiff's testimony on the functionality of the 75 HVAC units that were to be replaced was unclear, contradictory and confusing.

The Court also finds that Plaintiff's assumption of a 100% occupancy rate for 26 months for the 45 apartment units that were to have received an HVAC unit but did not is speculative. As mentioned above, when Plaintiff bought the two apartment complexes in 2018 the complexes had a 70% occupancy rate and based on this occupancy rate, approximately 132 units were vacant. Plaintiff's son testified that in 2021 the apartment complexes were still operating at a higher than normal vacancy rate, and some of the vacancies were not attributable to HVAC units. From the evidence presented the Court finds that a reasonable juror could not conclude that Plaintiff established lost profit damages with reasonable certainty. *See e.g.*, *Cosmetic Alchemy, LLC v. Loving Lotus*, No. CV-10-1045-PHX-SRB, 2011 WL 285834, at *1 (D. Ariz. Jan.27, 2011) (declining to award damages on motion for entry of default judgment where assumptions in calculations were speculative; there was no evidence to support plaintiff's assumption that each and every product was sold over the internet).

For the reasons set forth above, the Court finds that Plaintiff has not sufficiently established that he is entitled to an award of lost profits. Plaintiff will be awarded his contract damages in the amount of $85,500.00 as explained in the Court's April 13, 2022 Order (Doc. 44).

**IV.   ATTORNEY'S FEES**

Plaintiff moves for an award of attorney's fees in the amount of $32,007.05 and costs in the amount of $3,225.50.[3] (Doc. 48.) The Court has discretion to award Plaintiff his attorney's fees in this case. *See* ARIZ. REV. STAT. § 12-341.01(A) ("In any contested action arising out of a contract, express or implied, the court may award the successful party

---

[3] The procedure for filing a bill of costs is governed by Rule 54.1 of the Local Rules of Civil Procedure. *See* LRCiv 54.1. Plaintiff's request for an award of costs should be made to the Clerk of the Court in accordance with this local rule.

- 6 -

reasonable attorney fees."). The Court finds that Plaintiff is the prevailing party in this action and is entitled to a reasonable attorney's fee award.

The factors set forth in Rule 54.2(c)(3) of the Local Rules of Civil Procedure guides the Court in determining the fee award amount. *See* LRCiv 54.2(c)(3) (setting forth factors to be considered in determining the amount of a reasonable fee award, including, the customary fee charged in matters of the type involved, whether the fee contracted between the attorney and the client is fixed or contingent, the amount of money involved, the results obtained and the experience, reputation and ability of counsel).

Upon review of the relevant Rule 54(c)(3) factors, the Declaration of Mark Pyper, the fee agreement in this case, and the submitted billing records, the Court finds that Plaintiff is entitled to an award of $27,411.05 in attorney's fees.[4]

## V. CONCLUSION

For the reasons set forth above, Plaintiff will be awarded the sum of $85,500.00 in contract damages as set forth in the Court's Order dated April 13, 2022. Plaintiff will be awarded attorney's fees in the amount of $27,411.05. Plaintiff will be awarded pre-judgment interest on the amount of $85,500.00 accruing from the date of the filing of the initial complaint until date of entry of judgment and post-judgment interest accruing from the date of judgment.

Accordingly,

**IT IS HEREBY ORDERED AWARDING** in favor of Plaintiff in the amount of $85,500.00. Pre-judgment interest on the amount of $85,500.00 shall accrue from the date of the filing of the initial complaint until date of entry of judgment and post-judgment interest shall accrue from the date of judgment. Plaintiff is awarded attorney's fees in the amount of $27,411.05.

---

[4] The Court reduces Plaintiff's request by $4,596.00. This reduction is comprised of (1) a $2,000.00 expert witness fees and 1.2 hours (at $295.00/per hour) in time spent reviewing an expert witness draft report and in speaking with the expert witness as there is no indication that an expert was used in this matter; (2) $1,593.00 representing 5.4 hours (at $295.00/per hour) for work related to a "Red Rock Roofing matter"; and (3) $649.00 representing 2.2 hours (at $295.00/per hour) for work related to preparing a motion for summary judgment.

…

**IT IS FURTHER ORDERED DIRECTING** the Clerk of the Court to terminate Plaintiff's motion for an award of attorney's fees (Doc. 48), enter judgment accordingly and close this case.

Dated this 12th day of July, 2022.

Honorable John C. Hinderaker
United States District Judge